# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### COLUMBIA DIVISION

| | |
|---|---|
| ACV Environmental Services, Inc., | Civil Action No. <u>3:25-cv-13346-SAL</u> |
| Plaintiff, | |
| vs. | **VERIFIED COMPLAINT** |
| Michael Stuart and Stuart Solutions LLC, | ***(Jury Trial Demanded)*** |
| Defendants. | |

Plaintiff ACV Environmental Services, Inc. ("ACV" or the "Company"), complaining of Defendants Michael Stuart ("Stuart") and Stuart Solutions LLC ("Stuart Solutions") (collectively, "Defendants"), would respectfully show unto the Court as follows:

### INTRODUCTION

1.     By this action, ACV seeks damages for, and preliminary and permanent injunctive relief against, the actions of Stuart and Stuart Solutions pursuant to the Defend Trade Secrets Act (the "DTSA"), 18 U.S.C. § 1836; the South Carolina Uniform Trade Secrets Act (the "Trade Secrets Act"), S.C. Code Ann. §§ 39-8-10, *et seq.*; the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code Ann. §§ 39-5-10, *et seq*.,; the valid and enforceable contractual agreements between Stuart and ACV; as well as the statutory and common law of South Carolina.

2.     ACV further seeks expedited discovery in this matter in order to preserve and protect its proprietary and trade secret information from actual and threatened misappropriation by Defendants, to stop Stuart from continuing to violate his valid and enforceable contractual obligations to ACV, as well as to safeguard its valuable relationships with key employees, customers, and vendors from unlawful interference by Defendants. *See* Rule 26(d), Fed. R. Civ. P.

1

3.      ACV provides its customers with recycling, waste, and environmental solutions, offering advanced recycling, solid waste, special waste, and hazardous waste treatment and disposal. The Company also offers field and industrial services, including 24/7 emergency response and equipment rental and cleaning.

4.      Stuart is a former Territory Sales Executive who was assigned to ACV's Lexington, South Carolina, location. Stuart abruptly resigned from his position with ACV on April 16, 2025. In willful disregard of his continuing contractual, statutory, and common law obligations to ACV, Stuart formed Stuart Solutions, a company that directly competes with ACV. ACV has now learned that Stuart formed Stuart Solutions *prior* to the separation of his employment with ACV and was unlawfully competing against ACV while still employed by the Company, which he deceptively tried to hide from his then-employer.

5.      ACV's Lexington, South Carolina, location specializes in offering emergency response, field and industrial, tank and equipment rental, and large-volume waste transportation services.

6.      Stuart Solutions is a direct competitor of ACV in the highly competitive industrial cleanup market, and the work Stuart is doing with and on behalf of Stuart Solutions is, upon information and belief, nearly identical with the work he did for ACV.

7.      ACV has been active in the emergency response, industrial cleanup, and large-volume waste transportation markets for decades, while Stuart Solutions was newly formed in January 2025.

8.      Upon information and belief, in an effort to quickly expand into the highly competitive industry, and to avoid the cost and expense associated with building its own customer base and training its own workforce, Stuart Solutions has deliberately targeted ACV's customers,

vendors, and sales professionals by using ACV's confidential, proprietary, and trade secret information.

9.     In short, Stuart and Stuart Solutions are trying to quickly gain market share at ACV's expense and without the years of effort and investment required to compete and establish market share on a fair and lawful basis.

10.     Upon information and belief, Stuart has misappropriated and will continue to misappropriate ACV's confidential, proprietary, and trade secret information in the above-described and other key areas, for the benefit of himself and his new company, Stuart Solutions.

11.     ACV submits that the above misconduct by Defendants is merely the first to be discovered, and Defendants have and continue to engage in the targeting of ACV's established customer and employee relationships via the misappropriation of ACV's confidential, proprietary, and trade secret information in order to benefit themselves and to quickly gain market share without incurring the time and expense necessary to develop their own proprietary information, customer relationships, and goodwill.

12.     ACV's attempt to resolve this matter short of litigation by writing to both Stuart and Stuart Solutions has been unsuccessful, while, at the same time, Stuart and Stuart Solutions have continued to aggressively target ACV's customers and vendors in a blatant effort to steal market share.

13.     As a direct result of Defendants' intentional wrongful conduct, ACV has suffered irreparable harm and continues to suffer the same in the form of actual and threatened misappropriation of its confidential information and trade secrets, damage to the Company's reputation and goodwill, loss of business opportunities, damage to relationships with customers, vendors, and prospects, and loss of market share.

14.     ACV has likewise suffered actual monetary damages, at an amount to be determined, resulting from Defendants' use of ACV's confidential and proprietary information, as well as Defendants' targeting of ACV's customers, potential customers, vendors, and employees.

15.     Absent immediate, permanent injunctive relief, ACV has no adequate remedy at law.

## PARTIES

16.     ACV is a New York corporation headquartered in New Jersey. ACV maintains a location at 1741 Calks Ferry Road in Lexington, South Carolina.

17.     Stuart is a citizen and resident of the State of South Carolina who, upon information and belief, presently resides at 562 Henley Lane, Aiken, South Carolina 29801.

18.     Stuart Solutions is a South Carolina limited liability company, and its registered agent is Hannah Stuart, Stuart's wife. The registered agent's address is Stuart's home address – 562 Henley Lane, Aiken, South Carolina 29801.

## JURISDICTION AND VENUE

19.     This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 because ACV asserts a claim for misappropriation of trade secrets under the DTSA. The Court also has pendent or supplemental jurisdiction over ACV's remaining claims pursuant to 28 U.S.C. § 1367.

20.     This Court also has diversity jurisdiction over this action because complete diversity exists between the parties and the amount in controversy exceeds $75,000.

21.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because all Defendants are subject to the personal jurisdiction of this Court, or in the alternative, because a substantial part of the events giving rise to this dispute occurred within this district.

22.     Venue is proper in this division because the events giving rise to this dispute occurred in the division.

23.     Defendants committed the acts complained of in violation of Stuart's contractual obligations to ACV, which have caused and continue to cause harm to ACV in Lexington County, South Carolina.

## FACTUAL ALLEGATIONS

**A.    Stuart's Employment with ACV.**

24.     Stuart began working for ACV on March 16, 2022, as an Environmental Services Project Manager. He was promoted to a Territory Sales Executive in Environmental Services in July 2023.

25.     As a Territory Sales Executive in Environmental Services, Stuart was assigned to the Southeast region and was more specifically designated to primarily serve customers in South Carolina. In this role, Stuart was responsible for developing new sales and maintaining existing customer relationships primarily in the following services lines: Industrial Services, Field Services, Emergency Response, Site Remediation, Waste Transportation, and Disposal.

26.     Stuart was also responsible for maintaining a thorough knowledge of the Company's available services, lines of business, and pricing structures. He was specifically tasked with developing and maintaining an awareness of market behavior and competitive trends in designated markets to anticipate changing customer needs.

27.     In short, as a Territory Sales Executive, Stuart was the face of ACV to its customers, potential customers, and vendors in his assigned market.

28.     The Environmental Services sector of ACV, which is comprised of treatment and disposal services, field and industrial services, and emergency response services, is an extremely

competitive industry and ACV's success in this business is dependent in part on its ability to serve and develop relationships with its customers. In this industry, strategies for effectively engaging with and servicing customers are critical components to success.

29.     ACV expends considerable resources and efforts to develop its business in this industry and offers a far-reaching and comprehensive set of environmental solutions for its customers' hazardous waste needs, all while maintaining competitive pricing.

30.     ACV uses Salesforce to gather and store competitive information about customers and prospects, including their preferences, historical sales information, and pricing.

31.     As a result of his employment in the Territory Sales Executive role for ACV, the Company entrusted Stuart with access to its confidential, proprietary, and trade secret business information, including, without limitation, information related to the Company's products and services, pricing models, marketing and strategic business plans, as well as information relating to the Company's customers, potential customers, and vendors (hereinafter referred to as ACV's "Confidential Information" and "Trade Secrets").

32.     More specifically, ACV's Confidential Information and Trade Secrets which Stuart had access to during his employment with the Company included, but was not limited to: customer, prospect, and vendor information and compilations; price lists and pricing structures; the historical services ACV provided to its customers, including customer preferences and pricing information; marketing and sales information; business plans and financial information; product and service designs and processes; and strategies regarding development and expansion of service offerings and sales.

33.     ACV's Confidential Information and Trade Secrets derive independent economic value from not being generally known to or readily ascertainable by proper means by the public,

and ACV takes reasonable steps to preserve the secrecy of this information, including, but not limited to, by restricting access to such materials to only those employees who need access in the scope of their work for the Company; securing the hardware, software, and network upon which such materials are stored; and barring distribution or reproduction of materials containing any information which relates to ACV's Confidential Information or Trade Secrets to outside individuals.

34.     ACV's efforts to maintain the secrecy and confidentiality of its information further include, but are not limited to, the implementation of data access controls via user accounts with password requirements and periodic expiration dates.

35.     Employees are provided with user accounts that are granted access to data as is appropriate and necessary by each employee's department and/or discipline. Employees receive annual cyber security and awareness training, and ACV engages in periodic phishing tests to determine training effectiveness and to identify needs for additional training.

36.     In addition, ACV utilizes network firewalls to protect company servers, separating internet accessible systems from internal network resources, and providing guest Wi-Fi connectivity that is separate from the company network. ACV has also implemented email, web, and endpoint protection to protect its computing environment and information.

37.     ACV's IT department monitors potential issues and takes appropriate action, such as requiring password changes when unusual user activity is seen or reported, investigating and removing possible malicious emails, as well as investigating and resolving peculiar network activity.

38.     ACV also maintains policies that prohibit employees' unauthorized retention, use, or disclosure of the Company's Confidential Information and Trade Secrets.

39.    ACV's Code of Business Ethics and Conduct, a true and correct copy of relevant portions of which are attached as **Exhibit A**, provides that the Company's "proprietary and confidential business information and property must be protected against unauthorized disclosure and misuse in order to preserve our reputation and value for our shareholders." (Ex. A, p. 23.) Stuart explicitly agreed to "[n]ever use Company property for personal gain." (*Id.*)

40.    The Code of Conduct further provides that "all information and data you generate or gather when doing your job or when using Company-owned property will be the exclusive property of the Company" and "your obligation to protect this information continues even after your employment ends." (Ex. A, p. 24.) Proprietary and confidential information includes financial results, sales and business plans, marketing strategies, pricing and cost information, bids and proposals, employee information, and customer data. (*Id.*)

41.    Likewise, ACV's Employee Handbook, a true and correct copy of relevant portions of which are attached as **Exhibit B**, states that all employees must protect the Company's confidential and proprietary business information, including business strategies, future plans, financial information, contracts, supplier information, and customer information. (Ex. B, pp. 39-40.) Stuart further agreed to use Company property, including electronic devices, solely for business purposes. (*Id.* at p. 42.)

**B.    Stuart's Agreement with ACV.**

42.    To further safeguard the Company's assets, key employees like Stuart are required to sign restrictive covenant agreements. Stuart signed a Confidentiality, Non-Compete, and Non-Solicitation Agreement at hire, on March 7, 2022 (the "Agreement"). A true and correct copy of the Agreement is attached hereto as **Exhibit C**.

43.     The Agreement specifically states that it applies to "ACV Enviro Corporation together with all direct and indirect subsidiaries, including predecessors and successors, affiliates, assigns and other partnerships, corporations or business entities related to the Company or its shareholders that may emerge during the term of the Employee's employment with the Company and afterward…." (Ex. C.)

44.     Critically, the promises contained in Stuart's Agreement with ACV merely reinforce and supplement the Company's rights and Stuart's obligations established as a matter of law pursuant to the DTSA, the Trade Secrets Act, and other common and statutory law.

45.     As a condition of his employment and to protect ACV's Confidential Information and Trade Secrets from competitors, ACV required Stuart to enter into the Agreement.

46.     The Agreement clearly sets forth the confidential and proprietary nature of ACV's Confidential Information and Trade Secrets, as well as the Company's rights and expectations as to the continued protection of this information; specifically including, notably, Stuart's promise not to use or disclose any such information, and to return to ACV upon termination "all Company property in [his] possession, custody or control that [he] obtained during and from [his] employment by [ACV]". (Ex. C at § 2(c).)

47.     The Agreement defines ACV's Confidential Information to include:

Trade secrets, processes, marketing plans, business plans, engineering data, business strategies, management, and operations, financial information and forecasting, products, services, any equipment, methods, or processes for handling, transporting, or disposing industrial, hazardous, or other waste, developing lines of products or services, information related to the Company's customers and potential customers, business relationships with persons, firms, corporations and other entities, customer lists, customer records, customer preferences, prices, costs, purchasing, contracts, specifications, and Third Party Confidential or Proprietary Information….

(Ex. C at § 14(c).)

48.    Moreover, "Trade Secrets" are defined as "any information relating, in whole or in part, to the business or financial affairs of the Company … which the Company furnished to Employee or is otherwise learned or acquired by Employee from the Company … that is not generally known to or readily ascertainable by other persons or entities." (Ex. C § 14(h).)

49.    In recognition of the intrinsic value of ACV's Confidential Information and Trade Secrets with which Stuart was entrusted, and the unfair business advantage that information could provide to him and any direct competitor of the Company if misused, Stuart agreed that during the term of his relationship with ACV and for a period of six (6) months thereafter, he would not directly or indirectly:

> organize, establish, own, operate, manage, control, engage in, participate in, invest in, permit his name to be used by, act as an advisor or consultant to, or render any services for a "Competing Business" within the "Restricted Area";
>
> or render services as an employee, consultant, or in any other capacity to any ACV existing or prospective customer with whom [he] had direct contact with, performed services for, or obtained Company Trade Secret or Confidential Information about within the twelve months before [his] Termination Date, during [his] employment with the Company, where doing so would likely or probably result in [him] (i) supplying the same or substantially similar services to a Competing Business or ACV customer as those which [he] performed for the Company; or (ii) using, revealing, or disclosing Company Trade Secrets and/or Confidential Information.

(Ex. C at § 3(a).)

50.    The "Restricted Area" is defined as "the specific territory or geographic region assigned to the Employee during the last two years of Employee's employment with the Company." (Ex. C at § 14(c).)

51.    In addition, a "Competing Business" is defined as "any person, company, entity or firm which engages, or proposes to engage in the development, business or sale of (i) industrial service, waste transportation and disposal of hazardous or non-hazardous waste, or (ii) services or

product lines that are the same or much like products or services that the Company has begun sales efforts in or begun developing or has developed during the Employee's employment with the Company; or (iii) such other lines of business, or other products or services, that the Company may engage in or develop during the Employee's employment with the Company." (Ex. C § 14(c).)

52.     Moreover, Stuart agreed that during the term of his employment with ACV and for a period of twelve (12) months thereafter, he "will not … directly or indirectly: (i) solicit contact, divert, appropriate, or receive business from, or otherwise encourage or assist any third party in soliciting, attempting to solicit, contacting, or receiving business from, any ACV customer with whom [he] had direct contact with, provided marketing, sales or services to, or received Company Trade Secret or Confidential Information about, while employed by ACV…; or (ii) induce or attempt to induce any ACV customer from modifying, reducing, or withdrawing or terminating its business with the Company." (Ex. C at § 3(b).)

53.     Stuart further agreed that during the term of his employment with ACV and for a period of twelve (12) months thereafter, he "will not … (i) induce or attempt to induce any employee of the Company with knowledge of, or access to, Trade Secret or Confidential Information, to modify or terminate their employment with the Company; or (ii) induce or attempt to induce any vendor or supplier of the Company to reduce, modify, or terminate their business relationship with the Company." (Ex. C at § 3(c).)

54.     The Agreement contains a tolling provision which states that "[i]f Employee violates a timed restriction in this Agreement, the period for that will be extended by one day for each day the Employe is found to have violated the restriction, no more than 12 months." (Ex. C at § 13.)

C.    **Stuart's Misconduct in Violation of ACV's Rights.**

55.    In April 2025, the Branch Manager for the Lexington, South Carolina, location received information that Stuart had started his own business, Stuart Solutions, and was actively competing against ACV.

56.    Upon further investigation, the Branch Manager discovered that Stuart was potentially renting equipment (a back tanker) from the same vendor ACV rented certain equipment from. In addition, the Branch Manager discovered that ACV had lost an account that comprised approximately $11,000 a month in sales. Upon information and belief, Stuart and Stuart Solutions began running loads for this ACV customer, which included picking up oily water loads and hauling it to different waste locations.

57.    On April 16, 2025, a Human Resource Manager met with Stuart to discuss information the Company had received regarding Stuart starting his own business and attempting to and taking business away from ACV, while still employed by the Company.

58.    During this meeting, Stuart denied that Stuart Solutions did business which competed with ACV. Stuart represented that Stuart Solutions only did grass cutting, dirt removal, and tree removal services. ACV has now learned that these representations were false.

59.    At the conclusion of the meeting on April 16, 2025, Stuart abruptly resigned from ACV.

60.    Despite his legal obligations to ACV, Stuart formed and began working for a direct competitor of ACV's while still employed by the Company.

61.    Stuart tried to hide the fact that he was doing directly competing work in a nearly identical fashion by misrepresenting to ACV the nature and scope of his planned work with Stuart

Solutions. Stuart failed to inform ACV that he was, in fact, taking business away from ACV and performing the same services for ACV's customers on behalf of Stuart Solutions.

62.     Upon information and belief, Stuart formed Stuart Solutions to directly compete against ACV. By forming this directly competing entity during his employment with ACV, and continuing work for Stuart Solutions after his resignation from ACV, it is inevitable that Stuart used and disclosed and will continue to use and disclose ACV's Confidential Information and Trade Secrets.

63.     The customers Stuart serviced and oversaw at ACV, and the type of work and services he provided to them on behalf of ACV, appears to be precisely the work and services he is providing to them and others at Stuart Solutions. Namely, Stuart (both during his employment with ACV and post-separation) is providing customers with hauling hazardous waste loads and other environmental services. As such, by soliciting, contacting, and receiving business from ACV's customers with whom he had direct contact during his employment with the Company, Stuart is breaching his customer non-solicitation obligations set forth in the Agreement.

64.     Stuart cannot carry out his duties for Stuart Solutions, which is undoubtedly a "Competing Business" pursuant to the Agreement, without breaching his continuing contractual obligations to ACV.

65.     Moreover, Stuart is providing these competing services within the "Restricted Area" as set forth in his Agreement – primarily, in South Carolina.

66.     Stuart began servicing at least one customer of ACV's via Stuart Solutions as early as February or March 2025, while he remained employed by ACV. This customer was one managed directly by Stuart at ACV, and he transferred the customer's business to Stuart Solutions.

67.    Upon information and belief, Stuart has stolen even more customers from ACV and has used ACV's Confidential Information and Trade Secrets to do so, resulting in at least $100,000 in lost sales to date.

68.    ACV recently learned that it lost another customer project to Stuart and Stuart Solutions. ACV completed this high six figure customer project last year and submitted a bid to complete the same project again this year. After losing the bid, ACV learned that Stuart and Stuart Solutions are working on this project.

69.    Furthermore, on February 16, 2025, Stuart emailed his customer list from his ACV email address to his personal Gmail account – a customer list that was compiled and maintained in ACV's Salesforce customer relationship management software, which ACV provided Stuart access to in connection with his job duties at ACV. A true and correct copy of this February 16, 2025, email, in redacted form, is attached as **Exhibit D**.

70.    In addition, prior to returning his Company-issued cell phone to ACV, on his own accord Stuart wiped his Company-issued iPhone by performing a factory reset in an apparent effort to conceal his misconduct.

71.    Additionally, the day of and/or the day prior to turning in his Company-issued laptop, Stuart plugged in multiple external devices and accessed ACV's Salesforce database and SharePoint site frequently, which is indicative of Confidential Information and Trade Secret theft. Upon information and belief, Stuart downloaded documents and information from Salesforce and ACV's SharePoint site and saved these materials on his personal external device(s).

72.    Furthermore, ACV recently discovered, upon information and belief, Stuart and Stuart Solutions are using ACV's Environmental Protection Act ("EPA") manifest tracking and ID numbers, which is a violation of Federal law and regulations. The EPA's waste manifest system

is designed to track hazardous and non-hazardous waste from the time it leaves the generator facility where it was produced, until it reaches the off-site waste management facility that will store, treat, or dispose of the waste. Waste transportation companies, like ACV and Stuart Solutions, are required to apply for and maintain a valid ID number in order to perform hazardous and non-hazardous waste transportation work and to record that ID number on the EPA's Uniform Waste Manifest form required for companies transporting such waste. ACV believes Stuart and Stuart Solutions are using the unique ID numbers assigned to ACV by the EPA to forge EPA-required manifest forms.

73.     After ACV made its position clear to Stuart and Stuart Solutions in its May 19, 2025, cease and desist letter, a true and accurate copy of which is attached as **Exhibit E**, undersigned counsel for ACV was contacted by an attorney who represents Stuart and Stuart Solutions. Stuart and Stuart Solutions made no effort to remedy Stuart's prior breaches and, upon information and belief, continued to actively compete against ACV and solicit its customers and potential customers in blatant violation of the restrictive covenants set forth in Stuart's Agreement.

74.     Upon information and belief, Stuart has already used and/or intends to use ACV's Confidential Information and Trade Secrets to target ACV's customers, potential customers, and vendors in improper competition and solicitation.

75.     Critically, ACV fears that Stuart's and Stuart Solutions' misappropriation of ACV's Confidential Information and Trade Secrets and further unlawful conduct is more pervasive and far-reaching than the Company is currently aware.

76.     Stuart's above-described misconduct is in direct violation of the law and his contractual promises to ACV as set forth in his Agreement, as well as his duty of loyalty to ACV.

77.     Stuart Solutions is clearly aware of, condones, and actively supports, participates in, and financially benefits from Stuart's willful misconduct.

78.     Upon information and belief, the above misconduct by Defendants is merely the first to be discovered, and Defendants have and continue to engage in a deliberate misappropriation of ACV's Confidential Information and Trade Secrets, as well as a direct targeting of ACV's established customer, vendor, and employee relationships, in order to benefit themselves and to expand Stuart Solutions' market share without incurring the time and expense necessary to develop the processes and customer knowledge and specialization required to sustain an environmental waste service company.

79.     As a direct result of Defendants' intentional wrongful conduct, ACV has suffered irreparable harm and continues to suffer same in the form of actual and threatened misappropriation of the Company's Confidential Information and Trade Secrets, damage to reputation and goodwill, loss of business opportunities, damage to relationships with customers and vendor sources, and loss of market share.

80.     At this time, the full extent of Defendants' trade secret theft and other misconduct in violation of ACV's rights is unknown.

81.     Absent injunctive relief, ACV has no adequate remedy at law.

### FOR A FIRST CAUSE OF ACTION
*(Misappropriation of Trade Secrets in Violation of the
Defend Trade Secrets Act, 18 U.S.C. §§ 1836, et seq. – Both Defendants)*

82.     ACV realleges and incorporates the preceding paragraphs as if set forth fully herein.

83.     While at ACV, Stuart had direct and intimate knowledge of ACV's Trade Secrets, which are exclusive to ACV and are not generally known in the industry.

84. During his employment with ACV, Stuart was afforded access to ACV Trade Secrets having actual or potential independent economic value from not being generally known to the public or other persons who can obtain economic value from their disclosure or use. Without limitation, this information includes customer, prospect, and vendor source information and compilations; price lists and pricing structures; the historical services ACV provided to its customers, including customer preferences and pricing information; marketing and sales information, including customer processes; business plans and financial information; product and service designs; and strategies and research regarding product and service developments and nationwide sales strategies.

85. ACV's Trade Secret information is not public and is made available only to key employees, such as executives and sales representatives on a need-to-know basis.

86. As described above, ACV takes reasonable measures to keep the information secret. Without limitation, ACV has utilized password protected computer systems to ensure that ACV's proprietary and confidential information is not improperly used, disclosed, or disseminated.

87. Among other measures, employees who are given access to such Trade Secret information are required to sign certain agreements, such as the Agreement Stuart signed, or similar agreements in order to further protect ACV's Trade Secrets.

88. ACV's Trade Secrets constitute trade secrets under the DTSA because they contain ACV's proprietary customer lists and information regarding ACV's customer needs, pricing, and other related information.

89. ACV's Trade Secrets derive independent economic value by not being known to or readily ascertainable by proper means by competitors like Stuart Solutions.

90.     ACV did not give Stuart permission to share its Trade Secrets with anyone outside of ACV.

91.     Upon information and belief, Stuart unlawfully misappropriated ACV's Trade Secrets while employed by ACV, in preparation to unlawfully compete with ACV and while under a duty to maintain their secrecy.

92.     Upon information and belief, Stuart used and disclosed ACV's Trade Secrets for and on behalf of himself and for the benefit of Stuart Solutions.

93.     Upon information and belief, Stuart Solutions has gained unauthorized access to ACV's Trade Secrets via Stuart and has used ACV's Trade Secrets for its own benefit and with the intent to unlawfully compete against ACV.

94.     Upon information and belief, Defendants are using ACV's Trade Secrets to target ACV's customers and to compete unfairly in the industry, capitalizing on ACV's extraordinary investment of time, resources, and goodwill.

95.     As a result of Defendants' misappropriation of ACV's Trade Secrets, ACV has suffered irreparable harm in the form of actual and threatened misappropriation of its Trade Secrets, injury and harm to its goodwill and business reputation, and loss of actual and prospective customers.

96.     ACV also has and continues to suffer present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

97.     ACV has no adequate remedy at law.

98.     Accordingly, ACV requests that this Court issue a Preliminary Injunction Order enjoining Defendants, directly or indirectly, alone or in concert with others, from:

        a.   Possessing, using, disclosing, or transmitting ACV's Confidential Information and Trade Secrets as specifically identified herein, including but not limited to

information related to ACV's customers, potential customers, and vendor sources, and special needs, purchasing histories, pricing, and margins, and providing that all original documents, records, materials, or devices containing or reflecting such information, and all copies thereof, be **immediately** returned to ACV; **and providing that**

b. Defendants shall identify to counsel for ACV, no later than two (2) business days from the date of the Court's Order, each and every customer, potential customer, vendor, or employee of ACV whom Stuart solicited, serviced, or called upon for his own benefit or for the benefit of his new employer (Stuart Solutions), directly or indirectly, and the full source, nature, and substance of any ACV Confidential Information or Trade Secrets, as identified herein, that Stuart may have used at any time subsequent to Stuart's employment with ACV or have disclosed to any third party during that timeframe and, where applicable, the names, dates, and contact information for the individual or entity to whom said disclosure was made; **and requiring that**

c. Defendants shall refrain from the destruction, alteration, transmittal, or movement of **any** documents, in whatever form, that may contain or reflect ACV's Confidential Information or Trade Secrets so that said documents may be gathered and reviewed by counsel for ACV and this Court; and

d. Any and all other such acts as the Court deems appropriate for injunctive relief.

99.     ACV also requests an Order granting ACV expedited discovery in order to ascertain the full nature and extent of Stuart's activities referenced herein, including, without limitation, the nature and extent of ACV's Confidential Information or Trade Secrets Stuart may have misappropriated and the nature and extent of ACV's employees, customers, and/or vendors Stuart may have solicited using said information.

100.    ACV asks that it be allowed to immediately serve all discovery allowed under the Federal Rules of Civil Procedure, including the deposition of Stuart, and to be entitled to responses to any written discovery within fifteen (15) business days of the service of said discovery.

101.    ACV further requests an Order requiring Defendants to enter into a Consent Protocol for the forensic analysis of electronic discovery in order to ascertain the full nature and extent of Defendants' activities referenced herein, including, without limitation, the nature and

extent of ACV's Confidential Information or Trade Secrets Defendants may have misappropriated and the nature and extent of ACV's employees, customers, and/or vendors Defendants may have solicited using said information.

102.    ACV is likewise entitled to an award of all actual, direct, and consequential damages sustained as a result of Defendants' misappropriation, an award equal to any profits earned by Defendants on the sales of goods and/or services to customers accessed through the misappropriation of ACV's Trade Secret information, exemplary damages, and an award of costs and reasonable attorneys' fees incurred by ACV in this action. (18 U.S.C. § 1836(b)(3)(B).)

## FOR A SECOND CAUSE OF ACTION
*(Misappropriation of Trade Secrets in Violation of the South Carolina Trade Secrets Act, S.C. Code Ann. §§ 39-8-10 et seq. – Both Defendants)*

103.    ACV realleges and incorporates the preceding paragraphs as if set forth fully herein.

104.    While at ACV, Stuart had direct and intimate knowledge of ACV's Trade Secrets, which are exclusive to ACV and are not generally known in the industry.

105.    During his employment with ACV, Stuart was afforded access to ACV's Trade Secrets having actual or potential independent economic value from not being generally known to the public or other persons who can obtain economic value from its disclosure or use. Without limitation, this information includes customer, prospect, and vendor source information and compilations; price lists and pricing structures; the historical services ACV provided to its customers, including customer preferences and pricing information; sales information, including customer processes; business plans and financial information; product and service designs; and strategies regarding product and service developments and nationwide sales strategies.

106.    As referenced above, upon information and belief, Stuart Solutions was improperly provided access to ACV Trade Secret information via Stuart.

107.   ACV's Trade Secret information is not public and is made available only to key employees, such as executives and sales representatives on a need-to-know basis.

108.   Such information constitutes Trade Secrets pursuant to the provisions of the meaning of the Trade Secrets Act, S.C. Code Ann. §§ 39-8-10, *et seq*.

109.   Such information derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

110.   ACV has engaged in efforts that are reasonable under the circumstances to maintain the secrecy of the records and information described herein. Without limitation, ACV has utilized password protected computer systems to ensure that ACV's proprietary and confidential information is not improperly used, disclosed, or disseminated.

111.   Employees who are given access to such Trade Secret information are required to sign certain agreements, such as the Agreement Stuart signed, or similar agreements in order to further protect ACV's Trade Secrets.

112.   Upon information and belief, Defendants have intentionally misappropriated and used, and unless restrained will continue to use, ACV's Trade Secrets to cause significant harm to the Company in the marketplace in order to unlawfully benefit Stuart and Stuart Solutions.

113.   Upon information and belief, Stuart used and disclosed ACV's Trade Secrets for and on behalf of himself and Stuart Solutions.

114.   Upon information and belief, Stuart Solutions has gained unauthorized access to ACV's Trade Secrets via Stuart for its own benefit and with the intent to steal business from ACV.

115.   Upon information and belief, Defendants have used and disclosed ACV's Trade Secret information by using same to conduct competing business to the detriment of ACV,

including without limitation the actual and threatened misappropriation of information related to ACV's proprietary customer and vendor lists, sales strategies, pricing information, and related information.

116.     Defendants' actions constitute actual and threatened misappropriation of trade secrets in violation of the Trade Secrets Act.

117.     As a result of all Defendants' actual and threatened misappropriation, ACV has been damaged, and Defendants have been unjustly enriched.

118.     Unless restrained, Defendants will continue to misappropriate ACV's Trade Secrets, causing continuing and irreparable injury to ACV's business as more fully set forth above and for which ACV has no adequate remedy at law.

119.     Pursuant to the Trade Secrets Act, ACV seeks a preliminary and permanent injunction barring Defendants' continued actual and threatened misappropriation of ACV's Trade Secrets as set forth hereinabove. (S.C. Code Ann. § 39-8-30.)

120.     ACV also seeks an award of actual damages incurred as a result of such wrongful acts, as well as an award of damages for the unjust enrichment caused by the misappropriation, or the imposition of a reasonable royalty. (S.C. Code Ann. § 39-8-40.)

121.     As a result of Defendants' willful and malicious misappropriation, ACV seeks an award of exemplary damages.

122.     ACV also seeks an award of punitive damages and as permitted by the Trade Secrets Act, its reasonable costs and attorneys' fees incurred in this action pursuant to S.C. Code Ann. § 39-8-80 and 18 U.S.C. § 1836(b)(3)(B).

### FOR A THIRD CAUSE OF ACTION
*(Unjust Enrichment – Both Defendants)*

123.    ACV realleges and incorporates the preceding paragraphs as if set forth fully herein.

124.    Upon information and belief, Defendants have wrongfully taken ACV's business opportunities, Confidential Information and Trade Secrets, and other valuable documents.

125.    Permitting Defendants to retain the benefit of the use of these opportunities and valuable information without ACV's authorization would be inequitable.

126.    Defendants have been unjustly enriched and should pay restitution such that ACV is returned to the status quo.

127.    Stuart has further been unjustly enriched in the form of the compensation and benefits provided to him during his employment with ACV, all of which was conditioned upon his agreement to honor the restrictive covenants set forth in his Agreement.

128.    ACV is therefore entitled to recover the full amount of these payments from Stuart, in addition to the above-demanded restitution.

### FOR A FOURTH CAUSE OF ACTION
*(Breach of Contract – Defendant Stuart)*

129.    ACV realleges and incorporates the preceding paragraphs as if set forth fully herein.

130.    Stuart entered into valid contractual obligations with ACV in the form of the Agreement.

131.    ACV provided Stuart with good and valuable consideration in exchange for entering into the contractual obligations in the Agreement, including but not limited to an offer of employment.

132.    ACV has fully performed all of its obligations to Stuart.

133.    In spite of ACV's good faith performance, Stuart has breached these contractual obligations by, among other things, forming and working for a directly competing entity, soliciting and/or influencing ACV's customers, potential customers, and vendor and referral sources to purchase Stuart Solution's competing services, and by misappropriating ACV's Trade Secrets and Confidential Information.

134.    As a result of Stuart's breaches, ACV has suffered actual damages.

135.    ACV is entitled to judgment against Stuart for its actual, general, compensatory, incidental, special, and consequential damages relating to Stuart's contractual breaches.

### FOR A FIFTH CAUSE OF ACTION
*(Breach of the Duty of Loyalty – Defendant Stuart)*

136.    ACV realleges and incorporates the preceding paragraphs as if set forth fully herein.

137.    As an ACV employee, Stuart owed ACV a duty of loyalty under South Carolina law and a corresponding duty to ensure that his conduct did not breach the trust of ACV, including, without limitations, his covenants to ACV set forth in his Agreement.

138.    ACV placed special trust and confidence in Stuart, investing substantial time and resources in him, and granting him access to ACV's Confidential Information and Trade Secrets, as well as to its customers, potential customers, and pricing information.

139.    Stuart accepted such trust and confidence.

140.    Stuart has breached his duty of loyalty to ACV by misappropriating ACV's Confidential Information and Trade Secrets and actively starting Stuart Solutions, a direct competitor of ACV, during and subsequent to his employment with ACV as described hereinabove.

141.    As a direct and proximate result of his breaches, ACV has suffered, and will continue to suffer, monetary damages.

142.     ACV is entitled to judgment against Stuart for its actual, general, compensatory, incidental, special, and consequential damages, as well as punitive damages.

143.     ACV is also entitled to recover from Stuart all wages paid to him during any period of his employment in which he was engaged in acts disloyal to ACV.

## FOR A SIXTH CAUSE OF ACTION
*(Tortious Interference with Contract and Prospective Business Advantage – Both Defendants)*

144.     ACV realleges and incorporates the preceding paragraphs as if set forth fully herein.

145.     Stuart Solutions was and remains aware of Stuart's continuing contractual obligations to ACV.

146.     Stuart Solutions condoned, ratified, assisted in, and benefited from Stuart's breach of his contractual obligations to ACV and other misconduct as described above.

147.     Stuart and Stuart Solutions have intentionally targeted ACV customers – whom Defendants know to be subject to existing contracts with ACV – and have sought to do business with them in direct violation of Stuart's contractual obligations to ACV.

148.     Defendants' misconduct as described above was wanton, willful, intentional, and in reckless disregard of ACV's rights.

149.     ACV has been damaged as a result of Stuart Solution's tortious interference with its contractual relations with Stuart, and by Defendants' tortious interference with its contractual relations with ACV's customers.

150.     ACV is entitled to judgment against Defendants for its actual, general, compensatory, incidental, special, and consequential damages, as well as punitive damages.

## FOR A SEVENTH CAUSE OF ACTION
*(Unfair Trade Practices Act – Both Defendants)*

151.     ACV realleges and incorporates the preceding paragraphs as if set forth fully herein.

152.    Defendants are engaged in "trade" or "commerce" within the meaning of those terms as used in Section 39-5-10(b) of the South Carolina Code.

153.    The above wrongful conduct of Defendants, namely the use of ACV's EPA manifest information, constitutes unfair and deceptive acts and practices in the conduct of trade or commerce and, therefore, violates Section 39-5-20(a) of the South Carolina Code.

154.    Defendants acted willfully in that they knew or should have known that their conduct constituted a violation of Section 39-5-20(a) of the South Carolina Code.

155.    These unfair and deceptive acts and practices adversely affect the public interest because, among other reasons, they are capable of repetition and affect public safety associated with a non-EPA approved business transporting waste without valid licensure.

156.    ACV has suffered actual damages as a direct and proximate result of these unfair and deceptive acts and practices.

157.    ACV is entitled to judgment against Defendants for the amount of its actual, general, compensatory, incidental, special, and consequential damages.

158.    Because Defendants' conduct was willful, ACV is entitled to an award of three times its actual damages.

159.    ACV is further entitled to recover its reasonable attorneys' fees and costs pursuant to Section 39-5-140 of the South Carolina Code.

### FOR AN EIGHTH CAUSE OF ACTION
*(Conversion – Both Defendants)*

160.    ACV realleges and incorporates the preceding paragraphs as if set forth fully herein.

161.    ACV has an ownership interest in and is entitled to possession of all documents and materials, in whatever form, related to its business, and has an ownership interest in its Confidential Information and Trade Secrets as described hereinabove.

26

162.    Upon information and belief, Defendants have wrongfully obtained electronic files, data, and documents without the authorization of ACV, including without limitation, documents containing or reflecting ACV's Confidential Information and Trade Secrets, and Defendants have been unjustly enriched by virtue of their use of same.

163.    The above acts of Defendants constitute a conversion of these electronic files, data, documents, and tangible materials.

164.    ACV has suffered actual damages as a direct and proximate result of this conversion.

165.    ACV is entitled to judgment against Defendants for the amount of their actual, general, compensatory, incidental, special, and consequential damages relating to such conversion.

166.    Defendants' actions were reckless, willful, and wanton, and ACV is further entitled to judgment against Defendants for punitive damages.

### FOR A NINTH CAUSE OF ACTION
*(Accounting – Both Defendants)*

167.    ACV realleges and incorporates the preceding paragraphs as if set forth fully herein.

168.    ACV is entitled, pursuant to the DTSA, the Trade Secrets Act, and South Carolina common law, to recover any profits of Stuart and Stuart Solutions that are attributable to Defendants' intentional wrongful acts.

169.    The amount of money due from Stuart and Stuart Solutions to ACV is unknown to ACV and cannot be ascertained without an accounting of the profits made by Defendants attributable to their wrongful acts.

170.    Accordingly, ACV is entitled to an accounting of all funds and information received and retained by Stuart and Stuart Solutions attributable to their misconduct as described herein.

**WHEREFORE**, ACV prays for judgment against Stuart and Stuart Solutions providing it with the following relief:

1.      A Preliminary and Permanent Injunction Order enjoining Defendants, directly or indirectly, alone or in concert with others, from:

    a.  Violating Stuart's Agreement with ACV;

    b.  Possessing, using, disclosing, or transmitting ACV's Confidential Information and Trade Secrets as specifically identified herein, including but not limited to information related to ACV's pending projects and strategic initiatives, business plans and strategies, as well as information related to ACV's customers, potential customers, and vendors, and special needs, purchasing histories, pricing, and margins, and providing that all original documents, records, materials or devices containing or reflecting such information, and all copies thereof, be immediately returned to ACV; and providing that

    c.  Defendants shall identify to counsel for ACV, no later than two (2) business days from the date of the Court's Order, each and every customer, potential customer, vendor source, or employee of ACV whom Stuart solicited, serviced, or called upon for his own benefit or for the benefit of his new employer, directly or indirectly, and the full source, nature, and substance of any ACV Confidential Information or Trade Secrets, as identified herein, that Stuart may have used at any time subsequent to Stuart's employment with ACV or have disclosed to any third party during that timeframe and, where applicable, the names, dates, and contact information for the individual or entity to whom said disclosure was made; and requiring that

    d.  Defendants shall refrain from the destruction, alteration, transmittal, or movement of any documents, in whatever form, that may contain or reflect ACV's Confidential Information or Trade Secrets so that said documents may be gathered and reviewed by counsel for ACV and this Court; and

    e.  Any and all other such acts as the Court deems appropriate for injunctive relief.

2.      ACV also requests an Order requiring Defendants to compensate ACV for its reasonable costs and attorneys' fees incurred in this action pursuant to 18 U.S.C. § 1836 and S.C. Code Ann. § 39-8-80;

3.      ACV also requests an Order granting ACV expedited discovery in order to ascertain the full nature and extent of Stuart's and Stuart Solutions' activities referenced herein, including,

without limitation, the nature and extent of ACV's Confidential Information and Trade Secrets Stuart may have misappropriated and the nature and extent of ACV's employees, customers, potential customers, and vendors or referral sources Stuart and/or Stuart Solutions' may have solicited using said information;

4.      ACV asks that it be allowed to immediately serve all discovery allowed under the Federal Rules of Civil Procedure, including the deposition of Stuart, and to be entitled to responses to any written discovery within fifteen (15) business days of the service of said discovery;

5.      ACV further requests an Order requiring Defendants to enter into a Consent Protocol for the forensic analysis of electronic discovery in order to ascertain the full nature and extent of Defendants' activities referenced herein, including, without limitation, the nature and extent of ACV's Confidential Information and Trade Secrets Defendants may have misappropriated and the nature and extent of ACV's employees, customers, potential customers, and referral sources Defendants may have solicited using said information;

6.      Judgment against Defendants for the amount of ACV's actual, general, compensatory, incidental, special, and consequential damages relating to Stuart's contractual breaches and Stuart Solution's tortious interference with ACV's contractual rights, including without limitation, liquidated damages and treble damages pursuant to the causes of action set forth herein;

7.      An accounting of all funds and information received and retained by Stuart Solutions attributable to its misconduct; and

8.      Such other relief as the Court deems just and equitable.

*(Signature Page Follows)*

Respectfully submitted,

**LITTLER MENDELSON, P.C.**

*/s/ Katie E. Towery*
Katie E. Towery, Federal Bar No. 12861
E-Mail: KTowery@littler.com
Kellie A. Tabor, *Pro Hac Vice Forthcoming*
E-Mail: KTabor@littler.com
110 E. Court Street / Suite 201
Greenville, SC 29601
(864) 775-3193

*Attorneys for Plaintiff*

November 10, 2025